United States District Court
Southern District of Texas

**ENTERED**

September 24, 2021

Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
CORPUS  CHRISTI  DIVISION

| | | |
|---|---|---|
| JOHNNY  LEE  DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-162 |
| | § | |
| LORIE  DAVIS, *et al*, | § | |
| | § | |
| Respondents. | § | |

## ORDER ADOPTING  MEMORANDUM  AND  RECOMMENDATION
## AS SUPPLEMENTED  AND  MODIFIED

Pending  before  the  Court  is  Respondent  Lumpkin's[1]  Motion  for  Summary  Judgment (D.E. 15).  Soon after the summary judgment motion was filed, Petitioner, Johnny Lee Davis (Davis), filed a Motion to Request Correction of an Illegal Sentence (D.E. 16), which the Magistrate Judge construed as a response to the summary judgment motion.  D.E. 17.  Davis also filed a document entitled both "Memorandum of Law" and "Traverse  to  Response  to  Order  to  Show  Cause"  (D.E. 22),  further  addressing  the summary judgment issues.

On March 15, 2021, United States Magistrate Judge Julie K. Hampton issued a Memorandum and Recommendation (M&R, D.E. 23), recommending that Lumpkin's motion be granted, Davis's application for writ of habeas corpus (D.E. 1) be denied, and

---

[1]  Petitioner, Johnny Lee Davis, filed this habeas proceeding against "Warden Castro." D.E. 1. After screening the petition, the Magistrate Judge ordered service on Lorie Davis, who was then the Director of the Criminal Institutions Division of the Texas Department of Criminal Justice (TDCJ), in her official capacity. D.E. 8. Soon thereafter, Lorie Davis retired and Bobby Lumpkin assumed the position of Director of TDCJ-CID and the answer was filed by Lumpkin  as a substituted party. D.E. 14.

that a Certificate of Appealability be denied.  Both Lumpkin and Davis filed objections (D.E. 26, 27).

For ease of disposition, the Court has rearranged and grouped those of Davis's objections that are similar in nature.  And the Court has combined the analysis of Lumpkin's objections regarding the prosecutorial misconduct language with Davis's objections on the same subject.  The M&R is ADOPTED as supplemented and modified by this Order, Lumpkin's motion for summary judgment is GRANTED and Davis's petition is DENIED.

## STANDARD OF REVIEW

The district court conducts a de novo review of any part of the magistrate judge's disposition that has been properly objected to.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000).  As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

## FACTS

The evidence is set out at length in the Thirteenth Court of Appeals' opinion and in the M&R and will not be fully recounted here.  D.E. 12-2, 23.  In sum, Davis was convicted for criminal solicitation of murder.  The intended victim was Jenna Hernandez, the former girlfriend of his son, J.D.[2]  The motive was to prevent Hernandez from

---

[2]  For clarity in distinguishing between Petitioner Johnny Davis and his son Joshua Davis, Petitioner is referred to herein as Davis and his son as J.D.

testifying against J.D. in a criminal proceeding, which was scheduled for the same day on which her body was found.

Lawrence Mireles, who was convicted for committing the murder, lived with Davis and J.D.  And in a series of recorded jail telephone calls with J.D., Davis was heard suggesting that one way or another, J.D. would be getting out of jail and that Davis would have "Little Lawrence" (a reference to Mireles) take care of things.  However, Davis was not convicted of soliciting Mireles.

Instead, the conviction was for soliciting Jason Phillips, who was shown to be J.D.'s godfather and a gang leader whose permission for the murder Davis would, by custom, seek as part of his gang allegiance.   Kyle Rhodes, an Aransas Pass Police Department investigator, testified that Phillips told him that Davis had approached him several times to kill Hernandez because she had also stabbed J.D.  Phillips testified that Davis asked him three times to murder Hernandez and offered him $10,000 to do it.  This was confirmed by Phillips's girlfriend, Kim Longbine, who testified that she was present during one of Davis's requests and that Phillips agreed to it.

## DISCUSSION

### 1. General Global Objections

Davis begins his objections by stating globally that there is no evidence of (a) any kind, (b) Davis's gang membership, or (c) Davis's solicitation of murder.  D.E. 27, pp. 3, 22, 31 (objections 1-3).  As articulated, the objections are not sufficiently specific to challenge any particular finding of fact or conclusion of law set out in the M&R as required by Federal Rule of Civil Procedure 72(b)(2).  However, Davis does state more

specific subsidiary objections that will be addressed below. Because the first three objections are insufficient on their face and because the subsidiary objections are not sustained, the first three objections are OVERRULED.

### 2. Gang Affiliation Evidence as Inadmissible Hearsay

Davis objects that all evidence of his gang affiliation was hearsay and that the state trial court's admission of such evidence and limiting instruction to the jury was an abuse of discretion and a failure to properly weigh the dangers of unfair prejudice under the rules of evidence. D.E. 27, pp. 3, 22-23, 26-29 (objection 4). He further objects to the M&R's conclusion that this issue presents, at most, an error in the application of state law and is not a federal issue on which habeas relief can be granted. *Id.*

To overcome the Magistrate Judge's analysis, Davis insists that he stands to benefit from a rule that a federal habeas court can disagree with a state court's credibility determination and conclude that the ultimate decision was unreasonable or incorrect by clear and convincing evidence. But there was no factfinding regarding gang affiliation. That was simply some of the evidence offered to explain how Davis solicited Hernandez's murder. And an isolated challenge to the gang affiliation evidence is insufficient to overcome the other evidence supporting the actual finding of guilt for solicitation of murder. Moreover, Davis fails to identify any evidence to controvert the gang evidence or the finding of guilt, much less that it rose to the level of being clear and convincing.

Davis's authorities illustrate the shortcomings of his contention. In *Miller-El v. Cockrell*, the Supreme Court acknowledged the clear and convincing standard that the

magistrate judge properly applied with respect to evaluating a factual decision.  Habeas relief can be granted only if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding."  537 U.S. 322, 340 (2003).  The only reason the petitioner obtained relief in *Miller-El* is because the issue was whether a certificate of appealability (COA) should issue regarding a *Batson* claim of discriminatory prosecutorial action in exercising jury strikes.

The Supreme Court held that the court of appeals improperly denied the COA because it made a merits decision instead of a COA decision when it held that the substantial contrary evidence in the case was insufficient to meet the clear and convincing standard.  Nothing about *Miller-El* counsels against the Magistrate Judge's analysis on the merits issue here.  Neither does it counsel against the denial of a COA here because Davis has not demonstrated that the record contains any significant controverting evidence.

*Hall v. Director of Corrections*, 343 F.3d 976, 984 (9th Cir. 2003), does not reduce the standard of evidence necessary to challenge a fact finding on habeas review. Moreover, its procedural posture is essentially the reverse of this case.  The *Hall* analysis begins with the observation that "There was no physical or forensic evidence connecting Hall to the murder, or to the area where [the victim's] body was found." *Id*. at 980.  Hall was, instead, convicted on inconsistent evidence that included notes provided by a jailhouse informant, which were proffered as indirect admissions.  The state trial judge, sitting in habeas jurisdiction, granted a new trial after hearing previously undisclosed evidence that the jailhouse informant had altered his questions in the notes to make it

appear that Hall's answers incriminated him.  This evidence of alterations was confirmed by forensic document examination experts.

The state appellate court reversed the order for a new trial, holding that the trial court had not actually found that the evidence was falsified, thus defeating the basis for Hall's due process challenge.  The Ninth Circuit, on federal habeas review, disagreed and wrote:

> The California Court of Appeal, therefore, proceeded from an incorrect premise, "agreeing" with the trial court that the notes were not false evidence, instead of acknowledging the trial court's implicit finding that they were. This was an unreasonable determination of the facts in light of the evidence that was presented at the state court evidentiary hearing. The state habeas trial judge necessarily found the notes to be false, and this finding was entitled to "great weight."

*Id*. at 983.

In describing its decision, the Ninth Circuit majority stated that objective unreasonableness is "not a mere synonym for clear error."  *Id*. at 984 n.8.  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) standards, the courts do not turn a blind eye "[w]here there are real, credible doubts about the veracity of essential evidence and the person who created it."  This proposition does not call for a routine reweighing of evidence, but is an endorsement of the trial court's granting of a new trial because the evidence in favor of conviction was demonstrably infirm.  Because the issue was the granting of a new trial, consistent with the trial court's findings, the *Hall* decision does not support Davis's request that this Court substitute its assessment of the evidence for that of the jury when there is ample evidence to support the jury's verdict.

Neither is there any benefit to Davis's citation of *Torres v. Prunty*, 223 F.3d 1103 (9th Cir. 2000). As in *Hall*, the procedural posture of *Torres* was significantly different from that of Davis's case. The question in *Torres* was whether the trial court violated Torres's due process rights by failing to hold a competency hearing to determine whether Torres was competent to stand trial. The Ninth Circuit concluded that the trial court unreasonably determined that Torres was not entitled to a hearing. "At the very least, the trial court could not have concluded reasonably that Torres was disingenuous without inquiring of Torres himself, or of Dr. Wells. On these facts, merely observing Torres's demeanor in court would be insufficient factfinding to make a determination about Torres's credibility." *Id*. at 1109. Davis also cites to *McClain v. Prunty*, 217 F.3d 1209, 1223 (9th Cir. 2000), which disapproved of a trial court's failure to investigate a *Batson* challenge and instead taking the prosecutor's conclusory word when there was substantial evidence of discrimination. These cases do not suggest that evidence of gang affiliation by reputation and expert opinion renders Davis's conviction unconstitutional, particularly when there is no evidence to the contrary.

Davis cites five more cases for the proposition that a conviction on the basis of hearsay evidence violates the Fifth and Fourteenth Amendments regarding due process rights to a fundamentally fair trial. The cases do not apply because they have nothing to do with hearsay evidence: *United States v. Beechum*, 582 F.2d 898, 908 (5th Cir. 1978) (addressing the right against self-incrimination, not hearsay); *Murphy v. Waterfront*

*Commission of New York Harbor*,[3] 378 U.S. 52, 87 (1964) (Black, J., concurring) (same), *abrogated by United States v. Balsys*, 524 U.S. 666 (1998); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (addressing a prosecutor's knowing proffer of perjured testimony, not hearsay); *United States v. Bagley*, 473 U.S. 667, 683 (1985) (addressing *Brady* violation of withholding from defense counsel evidence of prosecution witnesses' bias through incentivized testimony, not hearsay); *Ex parte Brandley*, 781 S.W.2d 886, 893 (Tex. Crim. App. 1989) (addressing *Brady* violation, not hearsay).

Davis has failed to demonstrate error in the Magistrate Judge's application of the AEDPA standard of review to the issues addressing the gang affiliation testimony. Davis is not entitled to relief based on a hearsay objection that was addressed through a limiting instruction. He did not brief error in the trial court's determination of the admissibility of the evidence (as not unduly prejudicial under the rules of evidence), or the effectiveness of the trial court's limiting instruction. And this Court is not entitled to substitute a different view of the evidence absent a demonstration of clear and convincing contrary evidence. Davis's objections related to the gang affiliation testimony are OVERRULED.

### 3.  The Hernandez Murder as an Undisclosed Extraneous Act

Davis objects to all evidence of the Hernandez murder as an undisclosed extraneous act, offered in violation of the requirement that the prosecution disclose its intention to offer such evidence. *See* Tex. R. Evid. 404(b); Tex. Code Crim. P. Article

---

[3]  Davis cites the case name as "*Brady*." D.E. 27, p. 28. However, the Court was unable to find a case that included *Brady* as a case name at that citation or at another citation addressing hearsay evidence and constitutional rights. The cite brought up the *Murphy* case. Because *Murphy* and *Beechum* address the same—albeit inapplicable—issue, the Court assumes that Davis intended to cite *Murphy*.

37.07 § 3(g).  He argues that this made the trial fundamentally unfair in violation of the Fifth and Fourteenth Amendments, such that no instruction could cure it.  D.E. 27, pp. 3-5, 8, 29-32 (objections 5 and 19).

While his petition (D.E. 1) complains that the evidence of murder was an extraneous matter, he did not plead that it was a violation of any requirement that the prosecution disclose its intention to offer it under Article 37.07 § 3(g) or Texas Rule of Evidence 404(b).  He raised the issue for the first time in his traverse.  D.E. 22, p. 40.  And the M&R does not address the issue.

Nonetheless, Article 37.07, by its own language, does not apply to evidence offered in the guilt phase of a criminal trial.  Art. 37.07 § 3(e) ("Nothing herein contained shall be construed as affecting the admissibility of extraneous offenses on the question of guilt or innocence.").  And Rule 404(b) is concerned with evidence that goes only to the issue of character.

> (1) Prohibited Uses.  Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

Tex. R. Evid. 404(b).  Evidence that Mireles murdered Hernandez was not offered to evidence Davis's character, and a limiting instruction consistent with Rule 404(b)(2) was given.

In support of his argument, Davis cites *State v. Brinkley*, which holds:

> The offense of criminal solicitation is completed when the culpable request or inducement to commit a capital felony or a first degree felony is unilaterally presented. Proof that the felony is actually committed is not required to establish the offense of solicitation.  Guilt of solicitation may be established solely by proving the communication and the culpable intent. Tex. Penal Code Ann. § 15.03 (Vernon 1974).

764 S.W.2d 913, 915 (Tex. App.—Tyler 1989, no pet.); *see also Whatley v. State*, 946 S.W.2d 73, 79 (Tex. Crim. App. 1997) (Baird, J., concurring in part and dissenting in part) (citing *Brinkley*).  This does not suggest that evidence of the murder is automatically inadmissible as prejudicial.  It is simply not necessary to prove the crime of solicitation.

The standard for reviewing error in an evidentiary ruling under Rule 404(b) in a Texas state court is ordinarily abuse of discretion.  *Parlin v. State*, 591 S.W.3d 214, 223 (Tex. App.—Houston [1st Dist.] 2019, no pet.).  But as the Magistrate Judge observed, "An error in the application of state law does not provide a ground for federal habeas relief."  D.E. 23, p. 15 (citing *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993)).  To qualify for habeas relief, the petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).

To show constitutional error, the error must affect a substantial right:

> But an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a

> slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.
> Crim. App. 2001). We must examine whether the evidence
> had significant potential "to lure the factfinder into declaring
> guilt on a ground different from proof specific to the offense
> charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117
> S.Ct. 644, 136 L.Ed.2d 574 (1997).

*Parlin*, 591 S.W.3d at 224. Given that the murder was committed by Mireles, Davis has

not demonstrated that admission of the evidence necessarily reflected on his own

character in violation of Rule 404. Neither does he acknowledge that the evidence could

have worked in his favor insofar as the murder was not committed by the person he was

charged with having solicited: Phillips.

According to his own authority, because the trial court gave the jury a limiting

instruction, Davis must not only show that the evidence improperly reflected on his

character, but that "the evidence was so clearly calculated to inflame the minds of the

jury or is of such damning character as to suggest it would be impossible to remove the

harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.

Crim. App. 1992) (en banc), *cert. denied*, 508 U.S. 918 (1993). There is "an appellate

presumption that an instruction to disregard the evidence will be obeyed by the jury."

*Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (en banc), *cert. denied*,

484 U.S. 905 (1987).

Davis has not demonstrated that the evidence of Mireles's murder of Hernandez

went to his character or that the limiting instruction was necessarily ineffective. His

objections in this regard refer to pictures of Hernandez from the murder scene being

displayed on a large video screen. However, the record reflects that the trial judge

refused to admit any pictures of the Hernandez murder scene.  D.E. 12-18, pp. 28-29.
And there is no indication that such pictures were displayed.  D.E. 12-18, 12-19.  The
objection to the admission of the undisclosed extraneous act is OVERRULED.

### 4.  No Competent, Credible Evidence of Solicitation

On the premise that he can disqualify all of the relevant evidence against him,
Davis claims that there is no evidence to support his conviction.  D.E. 27, pp. 17-21, 24.
Each challenge is addressed below.

**Uncorroborated Accomplice Testimony**.  Davis seeks to disqualify Phillips's
testimony in its entirety because he was an accomplice or solicitee.  Tex. Code Crim. P.
Art. 38.14; Tex. Penal Code § 15.03(b).  Davis's argument that the crime must be proven
entirely by evidence independent of the solicitee is not supported by the statutes or his
case authorities.  It is enough that other evidence strongly corroborates the solicitee's
testimony.  The corroboration requirement is not a substitute for the solicitee's testimony
and does not render the entirety of the solicitee's testimony incompetent.

Under Article 38.14, the corroborating evidence supporting an accomplice's
testimony does not have to prove every element of the crime.  *Holladay v. State*, 709
S.W.2d 194, 199 (Tex. Crim. App. 1986) (en banc), *overruling Fortenberry v. State*, 579
S.W.2d 482, 485 (Tex. Crim. App. 1979).  Under § 15.03(b), a person may not be
convicted of criminal solicitation on the uncorroborated testimony of the solicitee and
"unless the solicitation is made under circumstances strongly corroborative of both the
solicitation itself and the actor's intent that the other person act on the solicitation."  This
test was met by the corroborating evidence in Davis's trial.

12 / 27

As the Thirteenth Court of Appeals and the Magistrate Judge found, there was adequate corroboration of Phillips's testimony in Longbine's testimony, the jail calls between Davis and J.D., and law enforcement testimony regarding the investigation of the crime and knowledge about how gang murders are pursued.  D.E. 12-2, pp. 8-9; D.E. 23, pp. 13-14.  While Davis also challenges the reliability of Longbine's testimony,[4] the context of the jail calls, and the hearsay nature of law enforcement testimony, none of those challenges raise an issue of constitutional proportions.   And his argument that Hernandez's murder does not prove his solicitation of the murder is moot because his conviction does not rely on that evidence.

His case authorities are inapposite.  *Fraley v. State*, 249 S.W. 866, 867 (1923) (no corroborative evidence of any kind); *Dewees v. State*, 47 S.W.2d 277, 278 (1932) (same); *Brown v. State*, 320 S.W.2d 845, 847 (1959) ("An accomplice cannot corroborate himself by his own statements made to third persons."); *Nolley v. State*, 368 S.W.2d 218, 219 (Tex. Crim. App. 1963) (evidence that corroborates the crime, but does nothing to connect the defendant to the crime, is insufficient); *McCarty v. State*, 163 S.W.2d 200, 202 (1942) (same).

Davis's  suggestion  that  the  corroborating  evidence  is  impermissible "bootstrapping" fails because each part of the corroborating evidence independently tends to show Davis's guilt.  *See Sonenschein v. State*, 722 S.W.2d 450, 452 (Tex. App.—

---

[4]   Davis suggests that Longbine's testimony is not corroborative because it went to soliciting a kidnapping, not murder.  D.E. 27, p. 22.  However, as set out above, the corroboration need not prove each element of the crime. And Longbine's testimony is strongly corroborative of both the solicitation of Phillips and the intent to harm Hernandez.

Austin 1986, pet. ref'd) (bootstrapping involves connecting two independent facts that do not corroborate a crime by the defendant).   Davis's arguments against the accomplice/solicitee testimony are rejected.

**Hernandez Relationship with J.D./Davis.**   Despite competent testimony, Davis objects that there is no written report to support the assertion that Hernandez was due to testify against J.D. at his hearing for a misdemeanor violation.   D.E. 27, pp. 5, 22 (objection 7).   Moreover, he objects to the evidence that Hernandez stabbed J.D. as hearsay because it is unaccompanied by a police or incident report.   D.E. 27, p. 7 (objection 12).   Nothing in his objections supports the implied premise that such reports are necessary predicates for testimony on these matters.

Davis acknowledges in his traverse that Longbine testified that the problem was Hernandez showing up in court—on a date very close to the evidence of solicitation and phone calls with J.D.—but he states this "fact" should not be sufficient to show motive. D.E. 22, pp. 31, 35.   The evidence of the stabbing was offered to show motive.   And there is no need for a police report of the stabbing to verify that Davis knew or believed it had happened.

He also objects that there is no evidence of any relationship between J.D. and Hernandez; there is nothing but a false impression of a motive for murder.   D.E. 27, p. 6 (objection 9).   Davis does not address any reason to discount Phillips's and Rhodes's testimony that J.D. and Hernandez had been in a relationship and that Hernandez had stabbed J.D.   D.E. 12-18, pp. 66-67, 95-96, 120, 186.   The arguments against crediting

the evidence that Hernandez had been in a relationship with J.D., had stabbed J.D., and was expected to testify against J.D. in court are rejected.

**Violation of Confrontation Rights**.  Davis objects to all statements of those who did not testify at trial subject to cross-examination.  D.E. 27, p. 6 (objection 8).  He fails to detail what evidence he is referring to and how the right of cross-examination was denied.  As such, the objection is general and conclusory in violation of Federal Rule of Civil Procedure 72(b)(2) and it is rejected.

**Paid Informants**.  Davis objects that the testimony of Phillips and Longbine was not competent because they were paid informants.  D.E. 27, p. 6 (objection 10).  He separately objects to all testimony of Phillips, Dan Morales, and Longbine because their testimony was incentivized.  D.E. 27, pp. 7-8 (objections 15 and 16).  He has not provided any authority that holds that paid informants cannot testify.  Any incentive goes to the weight that the jury chooses to give to the evidence.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Given that there was no evidence to the contrary, a bare assertion that the evidence was subject to impeachment is not sufficient to contradict the jury's decision.  The arguments against crediting the testimony of these witnesses are rejected.

**Phone Call Context**.  Davis objects that the phone calls between him and J.D. were taken out of context when the M&R concludes that they "appeared" to reference murder.  D.E. 27, pp. 6, 22-23 (objection 11); *see* D.E. 23, p. 14.  He suggests, without benefit of authority, that allowing such an inference is an incorrect standard for factual evidence.  The objection is conclusory and contrary to the law.  *See Hardesty v. State*,

656 S.W.2d 73, 76 (Tex. Crim. App. 1983) (comparing permissible inferences to presumptions). The argument is rejected.

**Speculation on Motive or Intent**. Davis objects to evidence of his feelings or emotions supporting motive as being speculative. D.E. 27, p. 7 (objection 13). He cites no authority for this argument and it is contrary to the law. "The reviewing court must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id*. "Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id*. at 15.

Here, evidence supports the jury's inference of motive. J.D. is Davis's son. Davis revealed his intention to free J.D. from incarceration in his phone calls. Phillips testified that Davis wanted to ensure that Hernandez did not testify against J.D. And Longbine testified that Hernandez had previously stabbed J.D. There is sufficient evidence from which the jury could infer a motive to solicit the murder of Hernandez. The Court rejects Davis's suggestion that any conclusion on motive or intent was speculative.

**Unqualified Gang Expert**. Davis objects to the use of Paul Lisowski as an expert on gangs as he lacks qualifications. D.E. 27, pp. 7, 23 (objection 14). The objection is conclusory and does not inform the Court of the missing qualifications or the expert opinions that are challenged. Neither does he show how this issue amounts to a deprivation of constitutional rights. As such, the objection is insufficient under Rule 72(b)(2).

The complaint that the jury or the Magistrate Judge engaged in an improper evidentiary standard by concluding that the gang-related testimony indicated a gang hit is incorrect. As detailed above, the jury is entitled to make inferences from the evidence. And reciting that a fact was "indicated" by the evidence is sufficient. The arguments against reliance on Lisowski's testimony are rejected.

**State Court Fact Recitations**. Davis objects to the Thirteenth Court of Appeals' findings, which were recounted in the background portion of the M&R (D.E. 23, p. 9). D.E. 27, pp. 8-9 (objection 20). This objection is repetitious of his other objections to different portions of the facts relied on here. This Court has already addressed the individual objections and the evidence on which they were based. The subsidiary arguments involved here are rejected as an unnecessary multiplication of the proceedings.

**Corrupt Investigator**. Davis objects that Leo Martinez, who was the lead investigator in the Hernandez murder, was fired for corruption in connection with the case and was fined for witness tampering and destruction of, or manufacturing, evidence. D.E. 27, p. 5 (objection 6). This objection is not presented as a basis for habeas corpus relief in his petition. D.E. 1. He did not present it in opposition to the motion for

summary judgment.  D.E. 22.  And he fails to point to any record evidence supporting this complaint.  Because nothing in the petition pleads or proves this issue, the argument is rejected.

**Reference to Miller.**  Davis objects to all references in the M&R to a person named Miller as there was no evidence of any such person at trial.  D.E. 27, p. 8 (objection 17).  This is a clerical error and all references in the M&R to "Miller" are STRICKEN and REPLACED with "Phillips," consistent with the M&R's citations to the record.  *See* D.E. 12-19, pp. 70-76.  While the Court corrects the M&R, the error is not one that changes the analysis or result.  The argument is rejected for that purpose.

**Conclusion**.  This is not a case where the record is entirely devoid of evidence of a crime, as Davis suggests, citing *Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960), *abrogated by Jackson,* 443 U.S. at 307 (allowing habeas review to include insufficient evidence as well as no evidence complaints).  As set out above, this Court is not empowered, on habeas, to simply reweigh the evidence and substitute its conclusion.  The fact finding must be contrary to clear and convincing evidence.  And Davis has not provided any evidence, much less clear and convincing evidence, to the contrary.  Davis has failed to demonstrate that the state court proceedings were contrary to, or an unreasonable application of clearly established federal law or involved an unreasonable determination of the facts in light of all the evidence.  All of the objections related to the admissibility and sufficiency of the evidence to support the conviction, addressed above, are OVERRULED.

5.  **Jury Charge Error**

Davis objects to the jury charge for failure to instruct on the evidentiary limitations of Texas Penal Code § 15.03(b), as stated in his § 2254 petition. Petition, D.E. 1, pp. 7, 13 (ground 4); Objections, D.E. 27, p. 8 (objection 18). He couches this in terms of failure to give proper instruction on all of the elements of the charge. D.E. 27, pp. 31, 33-35. But the elements of the charge of solicitation are set out in § 15.03(a) and there is no complaint about failure to include those elements. Addressed in Davis's own terms, there is no error in the jury charge. However, the Court must consider whether, reading the pleadings and objections in favor of Davis as a layperson, he fairly states a cognizable complaint.

The M&R finds that Davis's objections regarding jury charge error do not show a constitutional claim because they address only the application of state rules. D.E. 23, p. 18. However, this is too narrow a view of his argument. He raises this claim as a violation of his right to a fair and impartial trial, which is guaranteed under the Fifth, Sixth, and Fourteenth Amendments. Accordingly, habeas relief is potentially available. *E.g.*, *White v. Wheeler*, 577 U.S. 73, 76 (2015); *Washington v. Thaler*, 714 F.3d 352, 354 (5th Cir. 2013).

The jury charge did not include a § 15.03(b) instruction. D.E. 12-7, pp. 12-17. Section 15.03(b) requires corroboration of any testimony of the solicitee. While it does not set out additional elements of the charge, omission of a § 15.03(b) instruction is error under state law because it is law applicable to the case. *Claxton v. State*, 124 S.W.3d

761, 765 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing Tex. Code Crim. Proc. Art. 36.14).

Article 36.14 requires that the jury charge set forth the law applicable to the case and Article 36.19 states:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

Here, Davis did not object to the charge at trial as required. In that event, the fundamental error rule applies and the standard of review applicable to whether he has had a "fair and impartial trial" is "egregious error." *E.g.*, *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In *Claxton*, the methodology used to determine if there was egregious error was described as follows:

> To assess the degree of harm, we examine (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole.
>
> We review the corroborating evidence in the light most favorable to the verdict. Harm is egregious only if the corroborating evidence is so weak and unconvincing that, had they been properly instructed, rational jurors would find the State's case clearly and significantly less persuasive.
>
> The test used to evaluate corroboration is to eliminate from consideration the accomplice testimony and then

determine whether there is other incriminating evidence connecting the defendant with the crime. In determining the sufficiency of the corroboration, we consider the combined weight of the non-accomplice evidence even if it is entirely circumstantial. It is not necessary that the corroboration directly link the defendant with the crime or that it be sufficient evidence in itself to establish guilt.

*Claxton*, 124 S.W.3d at 765–66 (citations omitted).

As set out above, the record contains strong and convincing evidence connecting Davis with the crime. There was no controverting evidence. Consequently, the requirements of § 15.03(b) were met, even though the provision was omitted from the jury charge. There was no egregious harm.

Davis's other authority is misplaced. The opinion in *Webber v. State*, 29 S.W.3d 226, 231, 237 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd), found no reversible error in a jury charge mistake in the treatment of presumptions where the overwhelming weight of the evidence supported the conviction. The opinion in *Sheffield v. State*, 847 S.W.2d 251, 259 (Tex. App.—Tyler 1992, pet. ref'd), more aptly addressed the necessity for corroborating evidence to support a conviction based on accomplice testimony. However, in that case as well, the evidence was found amply sufficient to sustain the conviction.

The conviction was reversed in *Underwood v. State*, 853 S.W.2d 858, 859 (Tex. App.—Fort Worth 1993, no pet.), because the crime charged—solicitation of capital murder *for remuneration*—was submitted to the jury without the requirement of finding remuneration, an essential element. In contrast, no essential element was omitted from Davis's jury charge. In *Saunders v. State*, 572 S.W.2d 944, 955 (Tex. Crim. App. 1978),

the defendant testified at trial and admitted the essential facts of the criminal solicitation charge (hoping to be exonerated under a mistake of fact or entrapment defense).   Thus, the jury charge did not require the § 15.03(b) instruction.   The defendant, himself, admitted to the charges.

In *Guthrie v. State*, 149 S.W.3d 829, 834 (Tex. App.—Waco 2004, pet. ref'd), the opinion notes that the corroboration instruction of § 15.03(b) was required, as Davis argues.   However, given the overwhelming evidence (a tape recording of the solicitation), the defendant's right to a fair and impartial trial was not violated.   The same result obtains here.[5]

Because the omission of the § 15.03(b) instruction arguably implicates a defendant's constitutional right to a fair trial, the Court rejects any suggestion in the M&R that such error would not trigger habeas relief.   However, because the uncontroverted evidence corroborated Phillips's testimony, the Court finds that the error was harmless and did not, in fact, violate Davis's constitutional right to a fair trial.   There was no unreasonable fact finding or unreasonable application of federal law.   Therefore, the objections regarding the jury charge are OVERRULED.

### 6.  Ineffective Assistance of Counsel

Davis essentially repeats his complaints about the omission of the § 15.03(b) instruction in objecting that his attorney's failure to object to the jury charge violated his Sixth Amendment right to effective assistance of counsel.   D.E. 27, pp. 35-37.   He limits

---

[5]   Davis also cites *Walters v. State*, 247 S.W.3d 204, 206 (Tex. Crim. App. 2007), a case this Court has reviewed, but fails to find relevant to any issue.

his objection to only one of the two requirements for finding ineffective assistance of counsel:   prejudice.   He does not address whether the failure to object fell below objective standards of reasonableness under the circumstances.   *See Strickland v. Washington*, 466 U.S. 668 (1984).

He contends that the Magistrate Judge erred by accepting that questionable evidence tended to prove all elements of the crime—a proposition the Court has already rejected, above.   The objection is not accompanied by the citation of authorities or evidence.   As far as it goes, the objection fails because the Court has found that the evidence sufficiently eliminates any claim of prejudice—that Davis was denied a fair trial by the omission of the jury instruction and, if the jury had been properly instructed, Davis would not have been convicted.   The Court OVERRULES the objection.

### 7.  Prosecutorial Misconduct

Davis objects "to the comments and the pictures and all extraneous matters that the trial judge allowed this prosecutor to get away with," referencing the M&R (D.E. 23, p. 16).   While not entirely clear, it appears that he is calling into question prosecutorial misconduct relating to comments during the final argument and the display of pictures of Hernandez from the murder scene.   D.E. 27, p. 31.   His reasoning is that the fact that Mireles killed Hernandez does not prove that Davis solicited Phillips with the required intent that Phillips murder Hernandez and the photographs are calculated only to inflame the jury.

The Magistrate Judge found that the objectionable comments were subject to objections at trial, which the trial judge sustained.   D.E. 23, p. 16.   Elsewhere in the

M&R, the Magistrate Judge stated that the trial court did not allow the display of pictures of Hernandez's body. *Id.*, p. 4. While the M&R later acknowledges Davis's complaint regarding the display of pictures of Hernandez's body, it does not directly address that complaint. *Id.*, pp. 15-16.

After reviewing the trial transcript (D.E. 12-18, 12-19) and, particularly, closing arguments, the Court has not found any indication that photographs from the Hernandez murder scene were admitted into evidence or displayed for the jury and Davis has not provided any specific reference in the record to the contrary. Thus, the Court considers the prosecutorial misconduct objections only as they relate to the statements regarding the Hernandez murder.

Each time the prosecutor brought up the fact that Hernandez had, in fact, been murdered or that Davis had solicited someone other than Phillips, Davis's attorney objected and the trial court sustained the objection. D.E. 12-19, pp. 129, 130, 132. Davis has not shown that the trial court's ruling was insufficient to address any objection to the statements or their prejudicial nature. Consequently, his objection is OVERRULED.

Lumpkin, however, also objects. The M&R, in material respects, states, "The prosecutor's comments during closing arguments regarding Hernandez's murder were improper." D.E. 23, p. 16. Lumpkin complains that this is (a) a separate holding that purports to encompass more comments than those to which objections were sustained and/or (b) suggests that they were objectionable for more reasons than were stated on the record—without specifying any basis for associated federal habeas relief. D.E. 26.

The Court finds that Lumpkin reads too much into the statement. It is clearly a reference to the fact that Davis's trial counsel had objected to the only comments that Davis challenges, the trial court had sustained the objections on the basis articulated by Davis's counsel, and Davis had not made a case for habeas relief out of that issue. The Court holds that the observation regarding the trial court's rulings does not purport to, and should not be read to, exceed what appears on the face of the record. The objections are OVERRULED.

### 8. Jurisdiction

Davis objects to the holding that he failed to exhaust his claim challenging the trial court's jurisdiction. D.E. 27, p. 38-44. He claims that the judgment of conviction is a void judgment that is a nullity, *ab initio*, because the prosecutor was not properly acting for the District Attorney's office and had not taken the correct oath of office. While he cites cases for the proposition that a void judgment is unenforceable, he has not cited any legal authority for his assertion that the prosecutor had no authority to prosecute the case or that this made the judgment against him void.

Davis fails to acknowledge that, even though the M&R notes that the claim was unexhausted, it also denied the claim because it was conclusory. Nothing in Davis's objections before this Court specifically challenge the alternate holding. Davis's briefing is still conclusory, failing to provide a legally authoritative link between his complaints about the prosecutor's oath and any defect in the judgment against him. He simply repeats the arguments the M&R rejected. Objections to an M&R are not intended to supply a petitioner with a second bite at the same apple. *See Freeman v. Cnty. of Bexar*,

142 F.3d 848, 852 (5th Cir. 1998); Fed. R. Civ. P. 72(b)(2).  The objection is OVERRULED.

### 9.   Lack of Evidentiary Hearing

Davis objects to not being granted an evidentiary hearing to expand the record on unresolved facts material to the legality of his confinement.  D.E. 27, p. 45.  While he included a request for a hearing in the prayer of his traverse, he did not then—and does not now—explain what controverted unresolved facts are essential to this action and what authority supports his right to a hearing.  *See* D.E. 22, p. 49.  His objection is conclusory.  Rule 72(b)(2).  It is OVERRULED.

### 10.  Request for Attorney

Davis objects to not having a court-appointed attorney to assist him in these habeas matters.  D.E. 27, p. 45.  Under the Rules Governing Section 2254 and 2255 Cases in the United States District Courts, Rule 8(c), counsel is to be appointed if the court has determined that an evidentiary hearing is appropriate and if the prisoner qualifies under 18 U.S.C. § 3006A, which includes the inability to pay for counsel.  *See generally* Brian R. Means, FEDERAL HABEAS MANUAL:  A GUIDE TO HABEAS CORPUS LITIGATION, § 4:26 (Appointment of Counsel) (Thomson Reuters, 2021 ed.).  Davis has failed to show himself entitled to an evidentiary hearing and has failed to show that he qualifies for court-appointed counsel on the basis of inability to pay or other limits of 18 U.S.C. § 3006A.  While the Court has discretion to appoint an attorney in the absence of the need for an evidentiary hearing, Davis has not convinced the Court to do so under the circumstances and the record produced here.  The objection is OVERRULED.

**11.  Certificate of Appealability**

Davis objects to the recommended denial of a COA, simply disagreeing with the M&R's conclusion.  D.E. 27, pp. 44-45.  This objection is deficient under *Freeman* and Rule 72(b)(2) and is OVERRULED.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as the parties' respective objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **OVERRULES** both Davis's and Lumpkin's objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge as supplemented and modified herein. Accordingly, Lumpkin's motion for summary judgment (D.E. 15) is **GRANTED** and the Court **DENIES** the petition for writ of habeas corpus (D.E. 1).  In the event that Davis seeks a certificate of appealability,  the request is **DENIED**.

ORDERED this 24th day of September, 2021.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE